IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                                        Criminal Action
            Plaintiff,                  No. 1:25-cr-00074-JMC

      vs.
                                        July 2, 2025
1-TANWEER HUSSAIN PARKAR,               2:00 p.m.
2-VENKATA RAJU MANTHENA,
4-VASUDHA PHARMA CHEM LIMITED,

            Defendants.                 Washington, D.C.

_____

TRANSCRIPT OF THE STATUS CONFERENCE
BEFORE THE HONORABLE JIA M. COBB
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        JAYCE BORN, ESQ.
                           U.S. Department of Justice
                           145 N Street NE
                           Room 2e512
                           Washington, DC 20530

For Defendant Parkar:      CHARLES F. CONNOLLY, ESQ.
                           AKIN GUMP STRAUSS HAUER & FELD LLP
                           One Bryant Park
                           New York, NY 10036

For Defendant Manthena:    JEFFREY BROWN, ESQ.
                           DECHERT LLP
                           Three Bryant Park
                           1095 Avenue of the Americas
                           New York, NY 10036

(APPEARANCES CONTINUED:)


For Defendant            GLEN G. MCGORTY, ESQ.
Vasudha Pharma           CROWELL & MORING LLP
Chem, Ltd:               Two Manhattan West
                         375 Ninth Avenue
                         New York, NY 10001



Court Reporter:          Stacy Johns, RPR, RCR
                         Official Court Reporter

        Proceedings recorded by mechanical stenography,
        transcript produced by computer-aided transcription

**P R O C E E D I N G S**

DEPUTY CLERK:  Good afternoon, Your Honor.  We are on the record in Criminal Case 25-74, United States of America versus Defendant One, Tanweer Parkar; Defendant Two, Venkata Manthena; and Defendant Four, Vasudha Pharma Chem, Limited.

Please approach the podium and state your appearance for the record.

MS. MARKMAN:  Good afternoon, Your Honor.  Ligia Markman for the United States.  At counsel table with me are Lernik Begian and Jayce Born, also for the United States.

THE COURT:  Good afternoon.

MR. CONNOLLY:  Good afternoon, Your Honor.  Charles Connolly and Stephanie Ondrof on behalf of Mr. Parkar, who is in the courtroom and present.

THE COURT:  Good afternoon.

MR. BROWN:  Good afternoon, Your Honor.  Jeff Brown and Vince Cohen for Defendant Manthena, who's also in the courtroom and present.  Good afternoon.

THE COURT:  Good afternoon.

MR. MCGORTY:  Good afternoon, Your Honor.  Glen McGorty and Lisa Umans on behalf of a Vasudha Pharma Chem, Limited.

THE COURT:  Good afternoon.  Oh, hello.

PRETRIAL OFFICER:  Good afternoon Brittany Dahlkoetter on behalf of Pretrial Service Agency.

THE COURT:  Good afternoon, everyone.

So we're here for a status hearing.  I also have a pending motion for modification of release conditions, which I will deal with at the end of the hearing.  Let me start with the government to get an update.

And also, I had set a trial date tentatively.  I have some openings in my schedule for September, given other cases moving around.  So I am prepared to offer the parties an earlier trial date.

So, I guess, first let me hear from you about where we are in the case generally, and then we can talk about whether we can move the case up.

MS. MARKMAN:  Yes, Your Honor.  Status of discovery, to begin, we are almost complete.  We've produced over 1.7 terabytes of data, so it is substantial and voluminous production.

We are still waiting to unseal a couple of search warrant affidavits, but they are substantially similar to an affidavit that the defendants already have.

The defendants have already received copies of device images that were seized pursuant to arrest.  There are some odds and ends that we are still gathering, but they should be pretty minimal.  Of course, Giglio, Rule 3500 and Jencks material will come closer to trial.

Last time we were here we spoke about the third

individual defendant, Mr. Vericharla.  Our understanding is his defense counsel has had the opportunity to speak to him, but he is still considering whether or not to surrender.  If he does surrender, he wants to stay on the trial calendar the Court has already set.  So December 1st works for him.

If he does not, then obviously we might need to bifurcate, and he might need to be on a different schedule than the rest of the defendants.

But for now, I think the government has some conflicts in September.  We would discuss it, but I think the December trial date works for us and might allow a little bit more time for Mr. Vericharla to get here if he does choose to surrender.

We also, yesterday, met with all defense counsel and were discussing pretrial resolution possibilities.  We expect those conversations to continue, and that might also give us some time to do that.

So that's the status on our end.

THE COURT:  So the government would not be available to try this case the dates that I have open -- unless Mr. Duncan tells me otherwise -- September 15th, the two weeks beginning September 15th.  And then, I could also do September 22nd, which I think would take us through October 3rd.

So the 15th through the 26th or the 22nd through October 3rd.

MS. MARKMAN:  One second, Your Honor.

Your Honor, one of our trial team members has a lengthy trial scheduled to begin October 6th so they'll be in, sort of, the midst of heavy prep at the end of September. So that would be a little complicated on our end.

THE COURT: Okay. Then October is not available?

MS. MARKMAN: Unfortunately.

THE COURT: I also have free time in August. I figured that would be too soon, but I might as well just ask: Would you be available to do this trial in August?

MS. MARKMAN: We would need additional time to consider. I don't know how the defense feels. I know we just produced a lot of material to them.

THE COURT: Yeah, that's very soon. I'm just offering you-all my available dates since I said when I had to set it in December, because of largely my calendar, that I would see if I could open up time.

MS. MARKMAN: Thank you, Your Honor.

THE COURT: I'll hear from counsel for Mr. Parkar first.

MR. CONNOLLY: Your Honor, I assume this is just on and status and not the bail motion, correct?

THE COURT: Yes. This is just on the status and then trial schedule.

MR. CONNOLLY: Sure. So Charles Connolly on behalf of Mr. Parkar. We haven't had a chance to confer with our

co-counsel, but I think our sense is that, given some of the discovery and the timing, August would be too early.  If the government has a conflict in September, then I think sticking with the December 1st trial date works for us but making sure that goes in December.

THE COURT:  Okay.  Anything on your end as far as discovery?

MR. CONNOLLY:  We have submitted to the government lengthy discovery requests and letters.  They have responded to that.  I think there are a few items we're going back and forth on, but nothing that I think requires the Court's attention at this time.

Thank you, Your Honor.

THE COURT:  Okay.  Counsel for Mr. Manthena.

MR. BROWN:  Your Honor, my answers would be identical to Mr. Connolly's.  Thank you.

THE COURT:  So you'd keep the December date?

MR. BROWN:  I think so.  I'd like to have an opportunity to consult with everyone on the defense side.  But if there's a September conflict, August seams -- I think in our view, we're not likely to be as ready as we'd like to be.  So I think December's probably where we're headed.

THE COURT:  And on behalf of the corporation, are you fine with the December date, as well?

MR. MCGORTY:  Your Honor, we had at the last

conference, I think, discussed the possibility that your November would open up.  But barring that, I think we understand the government's conflict.  We're fine with December 1st.

If something is different after we confer, and I guess to the extent that we should also potentially include, as the government suggested, the fourth defendant's counsel in that conversation, we'll find out.

THE COURT:  I am booked in November.  So the only way I can make November work is if I asked if one of my colleagues could try the case, which I will do if the parties want.  I just think if we're talking about a December 1st trial date, I don't want to burden someone else for a short period of time.  But I will consider that.

MR. MCGORTY:  Consider that withdrawn, Your Honor.  We're fine with December 1st.

THE COURT:  So December 1st we'll keep.  And so then I will go ahead and issue our standard pretrial schedule that has all the deadlines for the joint pretrial statement, motions, et cetera.  If those dates don't work for you, you can just confer and submit a revised amended schedule.

And do you have a sense of when you'll hear from the other defense counsel?  Have you given them a deadline of any kind?

MS. MARKMAN:  We're working on it, Your Honor.  The

ball's actually in our court.  There are some conditions that they would like for his surrender.  We're discussing.  We'll get back to them.  But I expect in the coming weeks, we will have an answer.

But, as I said, I think the expectation is either he comes and stays on the schedule the Court has, or he doesn't come and we'll need a different date for him.

THE COURT:  Anything else before I deal with the bond motion?  And I would excuse the other parties, if nothing else.

I need to set a pretrial conference date.  Thanks for reminding me.

(Off-the-record discussion.)

THE COURT:  About how November 14th for a pretrial conference.  I could do pretty much any time.  I'll just throw out 10:30.  Does that work for the government?

MS. MARKMAN:  That works for the government.  Thank you, Your Honor.

THE COURT:  Does that not work for any defendant?

MR. MCGORTY:  That's fine.

THE COURT:  November 14th, 10:30 for a pretrial conference.

All right.  If there's nothing else for the other defendants then you can be excused, or you can stay.  I'll hear from the parties regarding the pending bond motion.

And if I could just have Ms. Dahlkoetter from pretrial

come up.

I don't know if you're familiar with the request. What is pretrial's ability to supervise someone overseas?

PRETRIAL OFFICER: Your Honor, I spoke to both defense and the government and I'm going to defer to you -- to the Court. He's going from the most extensive condition of GPS monitoring. We can't supervise GPS monitoring overseas. So the only thing that he would be able to do is call in weekly, or however you would like him to report. But it would be telephone, email, he would -- the only condition we would have is reporting. Right now he's courtesy supervised for us out of New Jersey.

THE COURT: Okay. And I'll hear from whoever is speaking for Mr. Parkar.

I just have a couple questions. My understanding is he was living with a family member and then went to this hotel situation. So I'm assuming he doesn't have family in the United States that he could stay with.

MR. CONNOLLY: Correct. He had a cousin. The cousin has high school aged children. It wasn't working out from a logistical standpoint. He has been in a single-room hotel in New Jersey, where his restrictions are he can leave to come to appearances like today and come to visit us for legal conferences, and that's basically it. So he's in his hotel room the other part of the 24-hour day.

THE COURT:  Is he working?

MR. CONNOLLY:  No.  Other than assisting with his trial defense, Your Honor.

THE COURT:  What did you say?

MR. CONNOLLY:  Other than assisting with his trial defense.

THE COURT:  So right now he's under, essentially, home incarceration.  So he can't leave except for --

MR. CONNOLLY:  He has one hour to go to the grocery store, but basically that's it, correct.  He can't leave at all.

When he does leave, it's all pre-approved with pretrial in New Jersey.  I would just note, Your Honor, that 14 minutes before the hearing began, we got an updated pretrial report from the New Jersey pretrial services.  And he is fully compliant with all conditions.  There's no violations, no concerns.

THE COURT:  The government had cited some case law and argument in response to your contention about the extradition waiver, suggested that it wouldn't be enforceable.  Do you have anything further in reply to that?

MR. CONNOLLY:  No, Your Honor, other than Mr. Parkar is willing to agree to whatever terms or conditions are necessary for purposes of allowing him to return home, primarily to help care for his ailing 89-year-old mother.  He's

the only child left.  She's deaf.  She's blind.  She has dementia.  And he wants to spend whatever time he can with her.

I would add, we had a very nice conversation earlier with pretrial.  He's willing to do daily calls.  He's willing to do video calls.  He's willing to send timestamped emails.  We understand that there can't be GPS over in the UK, but he will do whatever is necessary.

As our papers make clear, he's also willing to secure his house.  Right now there is an existing bond, secured bond, by family members, two different distant family members here in the United States that allowed for his release from incarceration to home incarceration.

In their opposition, the government makes clear that does provide some deterrence.  They point out that that is all because it's not his own money.

They also cite three cases in their opposition, each one of which defendants that were allowed to return to the UK had collateral in their house that was put up as well.  So we would do that.

The reason that we offered an extradition waiver in our papers is because that was a condition in the 22 cases we cited, Your Honor, in which courts both in D.C. and New York have allowed people to return to their homes when they're a citizen of other countries pending trial.  That was a condition that we also saw.

So I think the message on behalf of Mr. Parker is he wants to go home so he can spend time with his family and his mother.  He will show up wherever and whenever necessary, and he will do whatever conditions are needed to allow them to do that:  Secure a bond with his house, surrender his passport to -- we have an office in the UK, we could hold it.  He can send it to the embassy.  He could give it to someone the government designates.

If pretrial would like him to send an email at a certain time each day, he will do that.  He will do video calls.  He will do phone calls.  Pretrial will probably tell Mr. Parkar to stop calling, he will call that often.

So he will do what he needs to do in order to allow this transfer to happen.

THE COURT:  Okay.  Thank you.  Can I hear from the government?  I did read your opposition.

MR. CONNOLLY:  Your Honor, we filed that just yesterday, but I appreciate that.

THE COURT:  Okay, no worries.

So I just wanted to give you an opportunity to respond to the additional information in the reply.  Does the putting up of his family home change the government's position in any respect?

MS. MARKMAN:  Unfortunately, no, Your Honor.  And we are sympathetic to Mr. Parkar's circumstances.  We think that

he is trying to do what he can, but we don't believe that there is any set of conditions that could reasonably assure that he will appear here.

He acknowledges he has no real ties to the United States. His family is abroad. We understand that his mother is older and she has a series of conditions, and we're not, again, unsympathetic to that. But by his own admission, she appears to live with his wife and his two adult children. She's been, I presume, cared for by them for the last few months. There doesn't appear to be an exigent circumstance or an acute event that requires him to return home now.

And many of the cases cited by defendants, or the defendant, the government consented to having the defendant stay abroad during the pendency of trial or awaiting sentencing, presumably because of fact-specific inquiries that we are not, perhaps, privy to because they didn't have to be litigated, because the government consented.

In the cases where the government didn't consent, which are some of the ones that we cited, there were exigent circumstances, there were specific family events, an illness. And, yes, there was a significant bond package, but that wasn't the only thing.

Here, Mr. Parkar, unfortunately, has committed a crime that is quite serious, carries a presumption of risk of flight and a presumption of danger. We don't think that just because

those white collar wire fraud cases have a similar sentence they carry that same presumption.

We also want to note, Your Honor, that the government does not and has not conceded that Mr. Parkar is not a flight risk or a danger to the community. We have not opposed a very stringent set of conditions that allows him to not be incarcerated, but that doesn't mean that him freely roaming another country doesn't represent a risk of flight or a danger.

I also want to note, Your Honor, that -- we emphasize this in our response, and I want to emphasize it again -- the issue here is lack of candor. This is a defendant that lied to law enforcement post arrest. We believe we have evidence showing that he lied, and now we are trying to give him a set of conditions where all pretrial services will have to rely upon is his word about where he is and what he is doing at any given time.

We spoke to pretrial services, as Your Honor has just heard, and they indicated that they've never had a defendant go from this strict a set of conditions to that much freedom. So we think that this is a unique circumstance and a unique request, and we don't think Mr. Parkar, given the circumstances of this case, fits the mold for someone who should be allowed to have that amount of freedom.

THE COURT: And if I didn't agree with the request -- and I think I do want to just take it under advisement and I'll

issue an order very shortly. If I didn't agree with the request but thought that maybe the current conditions in light of the representations made about health and other things were detrimental, is the government still maintaining that home incarceration as opposed to electronic monitoring with a curfew is the least restrictive condition in light of the circumstances of the record so far?

MS. MARKMAN: We understand that he's been complying with his requirements. And we know we also, as Your Honor probably saw on the record, we have agreed for Mr. Manthena to have three hours outside of his residence and to be able to have a little bit more freedom than just 24/7 incarceration, but we did not agree to a curfew for Mr. Manthena for a reason. And Mr. Manthena does not have the same circumstance of having so blatantly lacked candor with law enforcement post arrest.

So our position is that, you know, we would have to think about it more. I don't have the authority to tell you right now that the government would agree to that, but we certainly don't think that there aren't ways that we could be a little more flexible. We just don't think that allowing him to travel and stay abroad right now is something we would be able to agree to.

THE COURT: Okay. I will take this under advisement and then rule quickly.

MS. MARKMAN: Thank you, Your Honor.

THE COURT:  Anything else from the government, since everyone is still here?

MS. MARKMAN:  Nothing.

THE COURT:  Anything from either Mr. Parkar's counsel or any other...

MR. CONNOLLY:  I know you're taking it under advisement, Your Honor.  We just have to note that we vehemently disagree with the characterization that he wasn't candid at all in his post-arrest interview.  As our papers set forth, we don't think this is a traditional case.  It's very, very different.  And it's very similar to the 22 other cases where the courts allowed people to return to the UK or other countries.

THE COURT:  Okay.  We will issue the pretrial order, then, shortly.  We're set for trial December 1st.

If there's nothing else, thank you, and everyone is excused.

(Proceedings concluded at 2:28 PM)

C E R T I F I C A T E


I, Stacy Johns, certify that the foregoing is an
accurate transcription of the proceedings in the
above-entitled matter.



/s/ Stacy Johns                Date: July 3, 2025

Stacy Johns, RPR, RCR
Official Court Reporter